THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALVIN WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 1—06—3063

Opinion filed August 24, 2009.

Marvin J. Leavitt and Andrew G. Schultz, both of Grund & Leavitt, P.C., of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Annette Collins, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:

The defendant, Alvin Williams, appeals from an order of the circuit court of Cook County denying his application for leave to file a successive postconviction petition. The defendant maintains that the court erred when it denied his application for leave to file a successive petition. For reasons set forth below, we disagree with the defendant and affirm the order of the circuit court.

## I. BACKGROUND

### A. *The Defendant's Direct Appeal*

Following a bench trial, the defendant was convicted of first degree murder in connection with the death of Joyce Battles (Joyce). The

defendant's conviction and sentence were affirmed on direct appeal by a majority of this court. See *People v. Williams*, No. 1—00—2556 (2002) (unpublished order under Supreme Court Rule 23).[1]

In order to place the defendant's contentions on appeal in perspective, a review of the pertinent facts is necessary. In the order disposing of the defendant's direct appeal, this court set forth a detailed account of the facts as revealed by the evidence at trial. The following pertinent facts are taken from our order disposing of his direct appeal.

In the early morning hours of October 13, 1998, Stuart and Tracy Avis were walking their dog when Stuart noticed a man trying to place a person (Joyce) on the back end of a white, four-door Lincoln automobile. Stuart told Tracy to call the police while he went over to see if everything was okay. Stuart observed as the man, later identified as the defendant, tried to place Joyce on the car, but she fell to the ground. Stuart did not see the defendant strike or kick Joyce and heard no screaming. He acknowledged that he may have told police that the defendant kneed Joyce in the stomach; he was not aware he told police that the defendant beat Joyce into unconsciousness.

Tracy Avis testified that while she was on the telephone to the police, she told them that the "man" was doing something to Joyce. She told the 911 operator that the defendant was kicking Joyce, but she acknowledged that she did not actually see his foot moving. Both Tracy and Stuart admitted they had been drinking alcohol prior to making these observations.

Dr. Joseph Lawrence Cogan, an assistant medical examiner, testified that he observed the following external injuries to Joyce: both eyelids were swollen and discolored; there was a two- to three-inch area of swelling and bruising between the right side of her face and right ear; there were injuries to the inside of her upper and lower lips; her right hand was swollen; and there was a bruise on her upper right arm.

The most severe injury was to her head. Joyce's brain was swollen on the left side. There was bruising over the frontal portion of her brain as well as over the right and left temporal lobes. Her brain was swollen to the point it was herniated. There was blood in the right and left ventricles and in the aqueduct, indications of "a more closed head trauma." *Williams*, slip order at 12. There may have been some skull fracturing but no big fractures. Some kind of blunt force trauma was applied to Joyce's head that was so severe that it shook the brain and produced contusions and much internal damage.

---

[1] Justice Hoffman's dissent was directed at a sentencing issue. *Williams*, slip order at 69-71 (Hoffman, J., concurring in part and dissenting in part).

According to Dr. Cogan, Joyce died as a "consequence of cerebral injury, subdural hematomas as the result of blunt force trauma to the head as a result of a beating." *Williams*, slip order at 12-13. There appeared to be a minimum of three and perhaps more incidents of force which caused Joyce's injuries because of the different areas of damage. He opined that the cause of death was homicide.

On cross-examination, Dr. Cogan agreed that, in an automobile accident, a person not wearing a seatbelt could sustain blunt force trauma and that Joyce did suffer a large subdural hematoma that could be consistent with one blow. Some of Joyce's injuries could have come from the procedures performed on her at the hospital. The wounds on her hands could have been offensive ones.

Initially, the defendant told the police that Joyce and he had been drinking at a bar with a friend. Upon leaving the bar, Joyce fell in the parking lot, striking her head. The defendant placed her in the car. When he opened the car door, she fell out. He denied being angry or upset with her or that they argued. He did not see any injuries on Joyce when she fell out of the car. He tried picking her up and placing her on the trunk of the car, but she fell off. He was trying to pick her up again when the police arrived. The officer who wrote the defendant's statement acknowledged that the defendant was impaired and smelled of alcohol.

Later on the morning of October 13, 1998, the defendant gave a statement to Assistant State's Attorney (ASA) Dawn Welke. After being advised as to his *Miranda* rights, the defendant told ASA Welke that Joyce and he had been at a bar and that Joyce had fallen outside the car and injured herself. After ASA Welke advised the defendant that his statement was not supported by the physical evidence, the defendant stated that he wanted " 'to get if off his chest.' " *Williams*, slip order at 16. The defendant was again advised as to his *Miranda* rights. He then dictated his statement to ASA Welke. After giving the statement, he reviewed it with ASA Welke and both of them signed each page.

According to the defendant's statement, as he was driving Joyce home from the bar, Joyce made a remark about the defendant's attentions to the female bartender. The defendant accused Joyce of cheating on him with her old boyfriend. Joyce struck the defendant. The defendant grabbed Joyce by the hair, pulled her toward him and then pushed her back. The defendant described Joyce as " 'put[ing]' her head against the piece of the car between the doors." *Williams*, slip order at 17. Joyce yelled and struck the defendant again. The defendant again pulled Joyce's hair and pushed her away. Joyce hit her head again. At that point, they arrived at Joyce's residence. When

the defendant opened Joyce's door, she fell out. As the defendant tried to help her up, he noticed the blood. A man came up and told the defendant that the police were on their way.

Testifying in his own defense, the defendant acknowledged that before going to Joyce's residence that night, he had consumed a couple of beers and smoked two or three rocks of crack cocaine. He had four or five beers at Joyce's residence. At the bar, Joyce and he drank rum and Coke with shots of tequila. After a friend, Ray Nielsen, joined them, the defendant noticed that Joyce and Ray were holding hands. The situation made the defendant angry, but he did not confront them.

As the defendant was driving Joyce home, he told her he did not like the fact that she was holding Ray's hand. Joyce struck the defendant and told him she was sleeping with her former boyfriend. The defendant grabbed her by the hair and pushed her back toward the passenger side door. Joyce hit her head somewhere in the car. The defendant was so aggravated he did not know how hard he pushed her. As the argument continued, Joyce struck him again. Again the defendant grabbed her by the hair, pulled her and then shoved her back; her head hit somewhere on the passenger side of the car. According to the defendant, it was at that point that he lost control of the Lincoln; the car went over a curb and bounced off.

By the time they arrived at Joyce's residence, Joyce was slumped over. When the defendant opened Joyce's door she fell out. When the defendant's efforts to pick her up failed, he dragged her over to the back of the car and tried to set her on top of the trunk. The defendant denied that Joyce and he struggled outside of the Lincoln, and he denied slamming Joyce's head against the windshield. Where there were injuries to his hands, he could have gotten them from the roofing job he did that morning. While acknowledging that he had " 'lost it,' " during the argument with Joyce, he did not intend to hurt or kill her. *Williams*, slip order at 29. The only thing he intended to do was to make Joyce stop striking him. *Williams*, slip order at 29.

The defendant admitted that he had lied to police when he told them Joyce had fallen in the parking lot, but he had been scared and nervous. He was still "pretty drunk" when he gave his first statement. *Williams*, slip order at 29.

On cross-examination, the defendant acknowledged that "he was both a drug addict and out of control" when these events occurred. Despite his intoxication, the defendant insisted he remembered everything that happened in the Lincoln during his fight with Joyce. *Williams*, slip order at 29.

In convicting the defendant of first degree murder, the trial court found that the defendant was not a credible witness and that his

testimony was inconsistent with the physical evidence. The court rejected the defense argument that the defendant was acting under a sudden and intense passion.

While not set forth in our order, we note that at his sentencing hearing, the defendant addressed the trial court, stating as follows:

"Your Honor, I am not denying there is no way for my actions, for this tragic death. The incident was caused by me who was not in the right state of mind. Looking back I know I could have taken different measures to avoid this incident. I know I made a very bad judgment, one I will have to live with the rest of my life."

The defendant then stated to the court that he was ready to take responsibility for his actions.

In his direct appeal, the defendant contended that his intoxication level was such that he could not knowingly and intelligently have waived his *Miranda* rights, that it was error to admit the expert testimony of Officer Thomas Henniger as to where the struggle between Joyce and the defendant began and that the evidence did not prove him guilty of first degree murder beyond a reasonable doubt. This court held that, while Officer Henniger was not qualified to give an expert opinion based on the blood and glass evidence, the trial court's determination of the defendant's guilt was supported by the physical evidence and was not dependant on the officer's expert opinion. This court rejected the defendant's argument that, at most, his acts were reckless or that he should have been convicted of second degree murder. We found that evidence was sufficient to find him guilty beyond a reasonable doubt. The defendant's petition for leave to appeal was denied. See *People v. Williams*, 204 Ill. 2d 681, 792 N.E.2d 313 (2003).

## B. *Postconviction Proceedings*

The defendant then filed a petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 2002)) (the Act). The defendant raised 10 claims, including evidentiary errors by the trial court and claims of ineffective assistance of counsel both at trial and on appeal. The postconviction court dismissed the petition as frivolous and patently without merit. The defendant appealed the dismissal of his petition, and the state appellate defender was appointed to represent him on appeal. The appellate defender presented a motion to withdraw as counsel based on counsel's determination that any appeal would be frivolous. The defendant filed a response opposing the motion to withdraw as counsel on appeal. After reviewing the record, we granted the motion to withdraw, agreeing with the appellate defender that there were no issues of arguable merit. See *People v. Williams*, No. 1—03—1037 (2005) (unpublished order under Supreme Court Rule 23).

On July 26, 2006, the defendant filed a document captioned "A Successive Petition for Post-Conviction Relief; Void Judgment," as well as a motion for substitution of judge, a motion for the appointment of counsel, a motion in *forma pauperis*, an affidavit, exhibits, and a statement of facts. As part of his petition, the defendant sought leave to file a successive postconviction petition. The defendant acknowledged that, in order to be allowed to file a successive postconviction petition, raising ineffective assistance of counsel claims he failed to raise earlier, he was required to meet the cause and prejudice test as set forth in section 122—1(f) of the Act (725 ILCS 5/122—1(f) (West 2006)).

The defendant alleged that he could not have raised these claims of ineffective assistance of counsel in his direct appeal because his trial counsel also served as his appellate counsel. The defendant further alleged that these ineffective assistance of counsel claims were not raised in his original postconviction petition because the inmate/law clerk who prepared the petition for him did not include these claims as he harbored a grudge against the defendant. The defendant further alleged that other claims were not alleged because he was unaware of them, due to trial counsel's failure to respond timely to his letters requesting hospital records, police reports and photographs. The defendant then alleged that the court must review each claim to determine if prejudice to the defendant requires that the waiver rule be relaxed in this case.

The defendant supported his allegations as to cause with the affidavit of Frederick Lambert, a fellow inmate and law clerk/paralegal. According to his affidavit, Mr. Lambert prepared the defendant's original postconviction petition. Mr. Lambert averred that the defendant "wanted all of his issues relating to Photo's evidence [*sic*], prosecutorial Misconduct, and directly photo's [*sic*] that showed cause that [the defendant's] Car tire was flattened and bent due to a possible accident. As well as medical contradictions that are proved facts within the record itself, among several other issues I did not prepare nor raise" in the defendant's 2003 postconviction petition. Mr. Lambert further averred that he did not raise these issues because he was not getting along with the defendant and "felt that if I just did 'prepare' enough to get by, [i]t would suffice and [the defendant] would not discover or know the difference."

On September 1, 2006, the postconviction court denied the defendant's application. The court found that the defendant failed to satisfy the cause and prejudice test of section 112—1(f). The defendant appeals.

## II. ANALYSIS

### A. *Standard of Review*

In reviewing a trial court's ruling on whether a defendant has satisfied the cause and prejudice test of section 122—1(f), the court applies the *de novo* standard of review. *People v. LaPointe*, 365 Ill. App. 3d 914, 923, 850 N.E.2d 893 (2006), *aff'd on other grounds*, 227 Ill. 2d 39, 879 N.E.2d 275 (2007).

We review the summary dismissal of a postconviction petition *de novo*.

### B. *Applicable Postconviction Principles*

The Act provides a procedure whereby a defendant may challenge his conviction for substantial " 'violations of federal or state constitutional rights.' " *People v. Anderson*, 375 Ill. App. 3d 990, 1000, 874 N.E.2d 277 (2007), quoting *People v. Tenner*, 175 Ill. 2d 372, 377, 677 N.E.2d 859 (1997). A postconviction proceeding allows inquiry only into constitutional issues that were not and could not have been adjudicated on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-56, 793 N.E.2d 609 (2002) (postconviction is a collateral proceeding not an appeal of the underlying judgment). "[I]ssues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered waived." *Pitsonbarger*, 205 Ill. 2d at 456. Relevant to the case before us, the Act provides that a claim not raised in an original or amended postconviction petition is also waived. 725 ILCS 5/122—3 (West 2004).

### C. *Compliance With Section 122—1(f)*

Section 122—1(f) provides in pertinent part as follows:

"Only one petition may be filed by a petitioner under this Article without leave of court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction petition and prejudice results from that failure." 725 ILCS 5/122—1(f) (West 2006).

Our courts have held that section 122—1(f) "unequivocally requires that a defendant *must* obtain leave of court *before* filing a successive petition, and if a defendant fails to do so, the court, whether *sua sponte* or on the State's motion, should dismiss any such petition." (Emphasis in original.) *People v. DeBerry*, 372 Ill. App. 3d 1056, 1060, 868 N.E.2d 382 (2007); see *People v. LaPointe*, 227 Ill. 2d 39, 44, 879 N.E.2d 275 (2007) (a postconviction petition cannot be filed unless the trial court grants leave to file the petition). Including the request for leave to file the successive petition in the petition itself does not

comply with section 122—1(f). See *People v. Daniel*, 379 Ill. App. 3d 748, 751, 886 N.E.2d 383 (2008). Because section 122—1(f) is a procedural prerequisite to obtaining review on the merits, the failure to meet the requirements of the statute means that neither the trial court nor the reviewing court should consider the merits of the petition. *People v. Collier*, 387 Ill. App. 3d 630, 635, 900 N.E.2d 396 (2008).

The filing of a separate motion for leave to file a successive petition is the preferred mode of proceeding. *Collier*, 387 Ill. App. 3d at 636; compare *People v. Simmons*, 388 Ill. App. 3d 599, 903 N.E.2d 439 (2009) (the defendant's third successive petition for postconviction relief was attached to his *pro se* motion for leave to file his successive petition). In this case, the defendant did not file a separate motion seeking leave to file a successive postconviction petition. Instead, he filed a successive petition for postconviction relief which contained his application for leave to file the successive petition. Nonetheless, where the procedural history of a case warranted it, the court has relaxed the bright-line rule articulated in *LaPointe* and followed in other appellate decisions. See *Collier*, 387 Ill. App. 3d at 635. Thus, where defendants' originally filed petitions under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2002)) were recharacterized as successive postconviction petitions and the defendants were given leave to amend their petitions, we have held that the trial courts "implicitly acknowledged a request for leave to file and thus fulfilled the requirements of section 122—1(f)." *Collier*, 387 Ill. App. 3d at 635-36; *People v. Smith*, 383 Ill. App. 3d 1078, 892 N.E.2d 55 (2008); see also *People v. Conick*, 232 Ill. 2d 132, 140 n.2, 902 N.E.2d 637, 642 n.2 (2008) (court noted that a technical imperfection in procedure did not hinder the trial court from performing its review under section 122—1(f)).[2]

Here, the postconviction court did not rule on the merits of the defendant's successive postconviction petition, but denied the defendant leave to file his successive petition based on his failure to meet the cause and prejudice test. As the defendant's "technical" violation of section 122—1(f) did not prevent the postconviction court from performing the review called for by section 122—1(f), we will not affirm the postconviction court's order on the basis that the defendant violated section 122—1(f).

---

[2]Unlike the First District Appellate court in *Collier* and *Smith*, in *DeBerry*, the Fourth District Appellate Court did not consider the fact that the trial court allowed the defendant to amend his successive postconviction petition to be an implicit request for leave to file his petition. See *DeBerry*, 372 Ill. App. 3d 1056.

## D. *Discussion*

For the purposes of section 122—1(f), "a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings" and "a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122—1(f) (West 2006). The defendant maintains that two "objective factors" prevented him from raising the claims contained in his successive postconviction petition, namely, that his original postconviction petition was prepared by a fellow inmate who deliberately failed to raise claims requested by the defendant, and that his trial counsel failed to timely furnish him with the documentary evidence necessary to support his postconviction claims. As to the defendant's first "objective factor," we find *People v. Lander*, 215 Ill. 2d 577, 831 N.E.2d 596 (2005), cited by the State, to be instructive.

In *Lander*, the defendant appealed from the dismissal of his postconviction petition at the second stage of the proceedings because it was untimely filed. To establish that the delay in filing was not due to his culpable negligence, the defendant alleged that he received erroneous advice as to the filing deadline for his postconviction petition from a law clerk employed by the prison as well as several jailhouse lawyers and that he confirmed with a prison librarian after he was transferred to a new prison.

In rejecting the defendant's argument, the supreme court distinguished *People v. Rissley*, 206 Ill. 2d 403, 795 N.E.2d 174 (2003), stating as follows:

"In *Rissley*, the defendant was not culpably negligent in the late filing because he reasonably relied on the advice of his attorney on direct appeal, a person who had obvious expertise in legal matters and, in particular, criminal appeals. [Citation.] In contrast, defendant did not allege sufficient facts to show his reliance on the advice of jailhouse lawyers, a prison law clerk, and a law librarian or paralegal was reasonable. While the defendant argues his reliance on the advice of the law clerk and law librarian was reasonable because they were employed in the prison library system, he did not allege in his pleadings that these individuals were hired to assist inmates with postconviction matters. Further, defendant did not allege the jailhouse lawyers, law clerk or librarian had any particular training in postconviction matters providing them with specialized knowledge of the filing deadline for a postconviction petition. We cannot find defendant's reliance on the advice of these individuals was reasonable when there are no facts to show they had any specialized knowledge in postconviction matters." *Lander*, 215 Ill. 2d at 587-88.

We note that the court in *Lander* cautioned that its holding in that case was fact-specific and that each case must be examined on its own facts. *Lander*, 215 Ill. 2d at 589. Therefore, we must examine the defendant's allegations to determine if the defendant's reliance on Mr. Lambert to prepare his original postconviction petition was reasonable.

While the defendant alleges that he relied on Mr. Lambert to raise the claims in his original petition that he now seeks to raise in his subsequent petition, there are no allegations as to any expertise Mr. Lambert possessed in postconviction matters. Moreover, Mr. Lambert stated in his affidavit that he did not raise the claims relating to the car accident, photographs, prosecutorial misconduct, and the medical evidence, despite the fact that the defendant had told Mr. Lambert that he wanted these claims raised. The original postconviction petition states that it was "prepared and argued by" Mr. Lambert. However, the petition is signed by the defendant. While Mr. Lambert averred that the defendant would not discover or know the difference, he did not state that he prevented the defendant from reading the petition or that he told the defendant that the petition contained all the claims the defendant wished raised. Likewise, the defendant did not allege that he did not read or was prevented from reading the petition, at which point he would have discovered that Mr. Lambert did not raise all of the claims as the defendant had instructed.

We conclude that the defendant failed to establish that his reliance on Mr. Lambert for the preparation of his original postconviction petition was reasonable and did not establish "cause" for purposes of section 122—1(f).

Turning to the defendant's second "objective factor," the failure of his trial counsel to furnish the necessary supporting documentation to him. The defendant maintains that he was unaware of certain of these claims until counsel furnished him with the material. Specifically, the defendant alleges that he was unaware that a Dr. Sharma made a finding that Joyce's injuries could have come from a traffic accident or from her head being hit several times in the same place. He further alleged that until he received the photographs, the defendant was not aware that the Lincoln had a flat tire and a dented rim.

The lack of the supporting documentation did not prevent the defendant from raising these claims in his original postconviction petition. Section 122—2 provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations *or shall state why the same are not attached*." (Emphasis added.) 725 ILCS 5/122—2 (West 2002). The defendant could have but failed to explain in his original postconviction petition that his counsel failed to

comply with his requests for the supporting documentation. As for the defendant's allegations that he was unaware of certain claims, the record shows that at trial, counsel brought up the possibility that Joyce's injuries resulted from the Lincoln hitting the curb and that some of her injuries could be attributed to the medical procedures performed at the hospital. The defendant himself testified that the injuries to his hands could have come from the roofing job he did. The trial record and Mr. Lambert's affidavit establish that the defendant was aware of these claims, if not all of the evidence that could be used to support them.

We conclude that the trial counsel's failure to provide the defendant with documentation to support his postconviction claims did not prevent him from raising those claims in his original postconviction petition and did not constitute cause under section 122—1(f). Having determined that the defendant has not established cause, we need not address whether the defendant established prejudice. *Pitsonbarger*, 205 Ill. 2d at 464 (in order for the defendant to prevail on his bid to file a successful postconviction petition, he must show both cause and prejudice).

Finally, the defendant contends that, even if he cannot show cause and prejudice, his failure to raise these claims in his original postconviction petition "will be excused if necessary to prevent a fundamental miscarriage of justice." *Pitsonbarger*, 205 Ill. 2d at 459. To demonstrate such a miscarriage of justice where death penalty eligibility is not at issue, a defendant must show actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459.

The defendant failed to raise an actual innocence claim in the trial court. While a claim of actual innocence may be raised at any time, "such claims are not self-executing but, rather, must be raised within the framework of an avenue providing relief." *Collier*, 387 Ill. App. 3d at 636. In his application for leave to file his successive postconviction petition, the defendant recognized that a claim of actual innocence could excuse his failure to raise these claims, but he alleged that he could "satisfy the cause and prejudice test as to each claim." Therefore, his actual innocence claim is waived on appeal. See *People v. Brown*, 371 Ill. App. 3d 972, 984, 864 N.E.2d 767 (2007) (the defendant waived actual innocence claim by failing to raise it in his postconviction petition).

We note that in *Smith*, this court considered the defendant's claim of actual innocence even though it did not appear that the defendant had raised the claim in the trial court. *Smith*, 383 Ill. App. 3d 1078. Even if we were to consider the merits of the defendant's actual innocence claim, it lacks merit.

In *People v. Morgan*, 212 Ill. 2d 148, 817 N.E.2d 524 (2004), our supreme court explained the procedure for the successful assertion of a claim of actual innocence as follows:

"To win relief under that theory, the evidence adduced by the defendant must first be 'newly discovered.' That means it must be evidence that was not available at the defendant's original trial and that the defendant could not have discovered sooner through diligence. The evidence must also be material and noncumulative. In addition, it must be of such conclusive character that it would probably change the result on retrial." *Morgan*, 212 Ill. 2d at 154.

As this court noted in *Collier*, " 'actual innocence' is not within the rubric of whether a defendant has been proved guilty beyond a reasonable doubt. [Citation.] Rather, the hallmark of 'actual innocence' means 'total vindication,' or 'exoneration.' " *Collier*, 387 Ill. App. 3d at 636, quoting *People v. Savory*, 309 Ill. App. 3d 408, 414-15, 722 N.E.2d 220, 224-25 (1999).

The defendant does not maintain that he complied with the requirements of *Morgan*. Rather, he argues that he need not establish that the evidence he relies on is "newly discovered" because his claim is not a freestanding claim of actual innocence but of actual innocence based on his claims of ineffective assistance of counsel. The defendant maintains that claims of actual innocence are often bound to claims of ineffective assistance of counsel, citing *People v. Smith*, 268 Ill. App. 3d 574, 645 N.E.2d 313 (1994). However, *Smith* is distinguishable as it involved an original postconviction proceeding, not a successive one.

In any event, we disagree with the defendant's argument that *Morgan* does not apply to his actual innocence claim. In *Smith*, the defendant raised a claim of actual innocence based on ineffective assistance of counsel. Relying on *Morgan*, the court determined that the defendant could not advance her theory of actual innocence based on newly discovered evidence. *Smith*, 383 Ill. App. 3d at 1088.

Moreover, the record in this case establishes that the evidence the defendant relies on is neither newly discovered nor would it exonerate the defendant of Joyce's murder. Most of this evidence is in fact cumulative to what was presented at trial. The jury heard testimony that, as the defendant struggled with Joyce, the Lincoln hit a curb. The jury also heard that Joyce could have suffered a blunt force trauma as a result of not wearing a seat belt and that some of her injuries were the result of medical procedures. None of this evidence exonerates the defendant, especially in light of the medical testimony that the injuries to Joyce resulted from no less than three incidents of force and the defendant's own testimony describing his acts in his struggle with Joyce. See *Collier*, 387 Ill. App. 3d at 638 (the court

rejected the defendant's attempt in a postconviction proceeding to use his claims of actual innocence to challenge the sufficiency of the evidence). Finally, at his sentencing hearing, the defendant acknowledged that his actions resulted in Joyce's death. See *Smith*, 383 Ill. App. 3d at 1088 (the record belied the defendant's allegations of ineffective assistance of counsel supporting her claim of actual innocence).

## CONCLUSION

In summary, the defendant has failed to satisfy the cause and prejudice test of section 122—1(f) and waived his claim of actual innocence by failing to raise it in the trial court. Even on the merits, his claim of actual innocence fails because he has not offered any new evidence, not previously discoverable, that would exonerate him of Joyce's murder.

We conclude that the trial court did not err when it denied the defendant's application for leave to file a successive postconviction petition.

The judgment of the trial court is affirmed.

Affirmed.

R.E. GORDON, P.J., and GARCIA, J., concur.