FIFTH DIVISION
July 9, 2010

No. 1-08-1868

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95CR11734(01) |
| | ) | |
| JOHNNY ENGLISH, | ) | The Honorable |
| | ) | Joseph G. Kazmierski, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Defendant Johnny English appeals the denial of his successive postconviction petition following an evidentiary hearing.

Defendant filed a *pro se* successive postconviction petition for relief from judgment under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)) relating to his conviction of first degree murder for the shooting death of Frank Klepacki and the attempted first degree murder for the nonfatal shooting of Casey Klepacki. The trial court appointed post-conviction counsel to represent defendant. The State filed a motion to dismiss this petition. After a hearing, the trial court granted the State's motion to dismiss as to some claims, but not as to others. After an evidentiary hearing was held on the remaining claims, the trial court denied defendant's petition. Defendant appeals, contending that the trial court erroneously denied his postconviction petition after an evidentiary hearing where he was denied the effective assistance of trial counsel where counsel failed to investigate and call various alibi witnesses. For the

No. 1-08-1868

following reasons, we affirm.

BACKGROUND

Following a bench trial, defendant was convicted of first degree murder, attempted first degree murder, and armed robbery. Defendant was sentenced to concurrent prison terms of 70 years, 30 years, and 30 years, respectively. On direct appeal, this court affirmed defendant's convictions and sentence. People v. English, No. 1972365 (1999) (unpublished order under Supreme Court Rule 23). Because the facts of the offense are fully set out in our order on direct appeal, we restate here only those facts necessary to an understanding of defendant's current appeal.

Trial

The State's evidence at trial, including defendant's pre-trial confession and the eyewitness testimony of the surviving victim, established the following. At approximately 9:30 p.m. on March 19, 1995, defendant and codefendant James Davis[1] were selling drugs outside of a house on the west side of Chicago. Codefendant approached defendant, informing him he had just sold drugs inside the house to "two white dudes" who would be "sweet victims" because they had a lot of money and would be easy to rob. Defendant and codefendant then determined that they would rob the victims, Casey and Frank Klepacki, by stationing themselves outside of a gangway on either side of the exit.

---

[1]Codefendant Davis was tried concurrently with defendant in a severed jury trial. He is not a party to this appeal.

2

Casey and Frank exited the building. Casey waved at defendant, whom he knew from prior encounters. Then, defendant and codefendant drew their guns, beat the victims about their heads with the guns, and pulled the victims toward a porch at the back of the building. Defendant pulled Frank up on the porch, forcing him to lie down. Meanwhile, codefendant put his gun to Casey's head. He ripped a necklace from Casey's neck and forced him to remove his shoes and socks to look for money. When he found no money, defendant told Casey to remove his pants. Casey complied. Then, Casey said, "If you're going to kill us, why don't * * * you just do it." Defendant apparently tried to shoot Frank, but the gun misfired. Casey saw that defendant had Frank in a headlock and was holding a smoking gun. Defendant then pointed the gun at Casey while codefendant patted him down. Codefendant was also aiming his gun at Casey while he did this. Then, defendant shot Casey in the back. Casey ran, but fell down and pretended to be dead while codefendant, still holding his gun, approached to check on him. After codefendant left, Casey fled. He heard two more shots fired as he did so. Frank was later discovered dead in the gangway, with a trail of blood leading from the porch. He had been shot at close range in the chest. In defendant's statement to the police, he admitted to the robbery, but claimed that codefendant was the shooter.

The State's evidence included testimony by William Wilson that he heard gunshots and then saw defendant run past him. He followed defendant as defendant attempted to unjam a handgun. When Wilson caught up with defendant, defendant told him that he and codefendant had tried to rob two men and that he had killed one and shot the other. Wilson had two prior convictions for unlawful use of a weapon, one for possession of a controlled substance with intent

3

No. 1-08-1868

to deliver, and one for delivery of a controlled substance

Defendant did not testify at trial. The defense rested without presenting further evidence. The defense theory was centered on the alleged unreliability of the surviving victim's eyewitness identification of defendant.

The trial court found defendant guilty of first degree murder, attempted first degree murder, and armed robbery.

Direct Appeal

Defendant appealed. On direct appeal, defendant alleged that the trial court's determination that the shootings were brutal and heinous was improper and that his sentences were excessive. People v. English, No. 1972365 (1999) (unpublished order pursuant to Supreme Court Rule 23). This court affirmed defendant's convictions and sentences. People v. English, No. 1972365 (1999) (unpublished order pursuant to Supreme Court Rule 23).

Initial Postconviction Petition

Defendant then filed a *pro se* petition for postconviction relief in 1999. In his petition, defendant alleged that his constitutional rights had been violated because: (1) he received ineffective assistance of trial counsel when his public defender failed to call two alibi witnesses (Farris Skinner and Ronald Streeter) on defendant's behalf; (2) he received ineffective assistance of trial counsel when his public defender failed to adequately prepare for trial; (3) the prosecution knowingly presented perjured testimony at trial; (4) the prosecution never called a witness they

4

named in their opening statement; (5) he received ineffective assistance of trial and appellate counsel for failing to notice, argue, preserve, and raise the prosecutorial error issue; (6) the eyewitness identification made by the surviving victim was unreliable because it was a cross-racial identification; (7) there was insufficient evidence to place defendant at the crime scene if the victim's identification and the alleged perjured testimony were suppressed; (8) he was denied due process and equal protection where he did not understand the statement signed at the police station and could not read the statement; and (9) he received ineffective assistance of appellate counsel for failing to raise the above issues on appeal.

Defendant's petition did not include the requisite affidavits. Defendant requested additional time to file these affidavits. The court continued the postconviction proceedings, waiting for the submission of the affidavits. On March 8, 2001, two days before the 90-day first-stage dismissal was to expire, the trial court appointed counsel to represent defendant and allowed the petition to proceed to the second stage of review without the supporting affidavits. In October 2001, the State filed a motion to dismiss the petition.

On January 7, 2002, appointed postconviction counsel informed the court that, after significant investigation, he was unable to locate the uncalled witnesses. The investigator, however, located William Hughes and William Wilson, but was unable to obtain useful information from them. As a result, counsel stated that he would not be able to amend defendant's petition or file supporting affidavits. Counsel filed a supplemental petition in which he asserted that defendant's sentence violated Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 145, 120 S. Ct. 2348 (2000). He also filed his Rule 651(c) (134 Ill. 2d R. 651(c)) certificate

5

No. 1-08-1868

attesting that he complied with the requirements of the Post-Conviction Hearing Act.

After a hearing on the motion, the court dismissed the petition on January 7, 2002. In doing so, the court found that defendant did not make a "substantial showing of a constitutional deprivation" and that no further hearing was required. It also found that Apprendi did not apply to issues raised on collateral review.

Defendant appealed the dismissal of his petition. However, defendant raised a new claim on appeal, asserting that his trial counsel was ineffective in the way he handled defendant's motion to suppress statements. Specifically, defendant alleged that his attorney failed to present expert testimony at the hearing to demonstrate that defendant's Miranda waiver was not knowing and intelligent. Defendant also argued that his appellate and postconviction counsel were ineffective for failing to raise this issue.

This court affirmed the dismissal of defendant's postconviction petition. We held that the issue raised for the first time on appeal was waived and that, because the new ineffective assistance of counsel claim lacked merit, waiver was not excused. People v. English, No. 1020280 (2004) (unpublished order under Supreme Court Rule 23). On the merits of the petition, we held that the postconviction court properly dismissed defendant's alibi claim because it was not supported by affidavits.

Successive Postconviction Petition

On February 16, 2005, defendant filed the successive postconviction petition at issue here. In this petition, defendant again claimed that his trial counsel was ineffective because he failed to

6

advance various alibi witnesses. To this claim, defendant added a third witness, Charles Streeter, to the previously listed two witnesses. Defendant again claimed that trial counsel was ineffective for failing to call an expert witness to demonstrate defendant's inability to knowingly waive his rights; failing to challenge the voluntariness of his confession; failing to adequately challenge the testimony of the surviving victim; failing to object to hearsay evidence; and failing to call Tomaine Davis and Charlotte English as witnesses in order to challenge the testimony of witness William Wilson and show that he perjured himself. Defendant also claimed in his successive postconviction petition that all of his attorneys (direct appellate counsel, postconviction petition counsel, and appellate postconviction counsel) were ineffective for failing to raise the issues on appeal and/or failing to raise them in the original postconviction petition. Defendant further claimed that he was indicted under a faulty statute and that all of his attorneys were ineffective for failing to recognize this error. Finally, defendant claimed actual innocence.

Defendant attached affidavits from Farris Skinner and Charles Streeter in support of his claim of ineffective assistance of trial counsel for failing to call three alibi witnesses. Defendant claimed that his counsel had made no effort to secure affidavits from these witnesses and had told defendant to get them himself. Consequently, defendant got the affidavits with the assistance of a company called the Prison Legal Aid Association. In his affidavit, Skinner attested that he and defendant were together at defendant's mother's house on the night of the shooting from about 10 p.m. to 6 a.m. the following morning. Farris also attested that Charles and Ron Streeter were with them during this time. Charles Streeter attested that he was with defendant at defendant's mother's house on the night of the shooting from about 10 p.m. to midnight. Charles also

attested that his brother, Ron, and Farris were with them that night.

Defendant also attached affidavits from Tomaine Davis and Charlotte English, defendant's sister, in support of his claim that William Wilson was forced to lie at trial. In their affidavits, Tomaine and English both attested that William Wilson told them he had been forced by the prosecutors to testify to lie at trial.

The postconviction court appointed counsel to represent defendant. Thereafter, counsel filed a Rule 651(c) certificate stating that he had consulted with defendant, read the record, and that defendant's petition adequately presented his claims.

On October 18, 2007, the State filed a motion to dismiss, arguing that defendant failed to establish cause and prejudice such that a successive petition should be allowed; that defendant's claims were barred by the doctrine of *res judicata* and/or waiver; that defendant's actual innocence claim was simply a bald assertion; and that there was no sustainable claim of ineffective assistance of trial counsel.

After hearing arguments on the motion, the postconviction court denied the State's motion to dismiss as to the ineffective assistance of counsel claims pertaining to counsel's failure to call alibi witnesses and for not adequately questioning witness William Wilson. It allowed those claims to proceed to an evidentiary hearing. The court, however, granted the State's motion to dismiss as to the other claims in defendant's petition.

Postconviction Evidentiary Hearing

The case proceeded to an evidentiary hearing on the alibi and perjury claims. At the

hearing, defendant testified on his own behalf and presented the testimony of his sister, Charlotte, and Ron Streeter, Charles Streeter, and Farris Skinner. The State presented the testimony of defendant's trial counsel, Crystal Marchigiani.

Defendant testified that he did not tell his attorney about his alibi until a year and a half after the case began because he "didn't really think it was important." He testified that he was only 18 years old at the time and did not know what was expected of him during the case because his attorney never asked him about his alibi, nor did she advise him of what he needed to do to be acquitted. Defendant explained that, at the urging of a fellow inmate, he eventuallyl mentioned having an alibi to his attorney and gave her the names of the alibi witnesses. Defendant's attorney told him she would "look into it." Later, about one month before trial, he and his attorney again spoke about the alibi, and she told him he would not need any alibi witnesses for trial.

Ron Streeter also testified at the hearing. Streeter was a convicted felon who was in custody for unlawful use of a weapon at the time of his testimony. His prior felony convictions were for armed robbery, aggravated battery, and residential burglary. He testified that he was 14 years old in 1995 and that he and defendant were friends from the neighborhood. Ron recalled that, on the night of the shooting, he was at a party at defendant's mother's house with defendant from about 7 p.m. to midnight. Ron testified that the party ended that night after a dispute involving a woman. Ron testified that, although he learned about defendant's arrest for the shooting the day after the party, he did not tell the police or counsel about defendant's alibi. He did tell defendant's family about the alibi.

Charles Streeter was in custody at the time of the hearing for unlawful use of a weapon.

He had also had prior convictions for drug offenses and unlawful use of a weapon. Charles testified that he was at the party with defendant on the night of the shooting from 7 p.m. to midnight and that the party ended because of a dispute over a woman. Charles admitted that he had previously signed an affidavit attesting that he was with defendant from 10 p.m. to midnight. Several months after the shooting, Charles learned that defendant had been arrested for murder. Charles testified that, after finding learning of this information, he left two telephone messages for defendant's attorney. The attorney did not return his phone calls. Charles did not speak with the police or the State's Attorney's office.

Defendant's cousin Farris Skinner testified that he was with defendant and the Streeter brothers at defendant's mother's house beginning at 3 p.m. on the day of the shooting. Farris admitted that he had previously signed an affidavit attesting that he was with defendant from 7:30 p.m. on March 19 until 6 a.m. on March 20. Farris testified he was at the same party as defendant and the Streeter brothers, but denied that it ended in an altercation over a woman. He testified that the guests who arrived with him left the party at 2 a.m. Farris testified that defendant called him after he was arrested and told him he had been charged with a murder that had occurred on the same day as the party. According to Farris, he spoke to defendant's attorney, a female public defender, about the party and the attorney discussed the possibility of him testifying at defendant's trial. Farris could not remember why he did not testify at the trial, but suggested it may have been due to a gunshot wound he suffered during the summer following the murder that had caused nerve damage and affected his memory. He testified, "[I]t's a lot I don't remember. I can't remember phone numbers. I can't remember a lot of things, not just something in [1995]. I don't

10

hardly remember what happened yesterday."

Defendant's sister, Charlotte English, primarily testified regarding the perjury claim that is not part of this appeal, stating that she was in the courtroom when William Wilson testified against defendant. After Wilson testified, Charlotte went out to the hallway to talk with Tomaine Davis. Wilson approached them and told them that he was coerced by the prosecution into testifying against defendant. Charlotte testified that both she and her mother were in the courtroom during defendant's trial. Charlotte also testified that she never talked to any of the alibi witnesses about testifying.

Assistant Public Defender Crystal Marchigiani testified that she represented defendant at his trial. The trial file was missing from the public defender's office at the time of the hearing, and Marchigiani relied on her memory and her personal notes from defendant's case for her testimony. She testified that, when she first met defendant, she spoke to him about the shooting and he never mentioned being at a party with Ronald Streeter, Farris Skinner, or Charles Streeter. Marchigiani recalled that "very close" to the time of the trial, somebody brought to her attention the existence of two possible alibi witnesses. She could not recall if it was defendant who provided her this information. She thought that one of the possible witnesses was named Kim Sweetland. Consequently, Marchigiani had an investigator from her office, Charles Jackson, locate these witnesses. She testified that Jackson located these witnesses and, after interviewing them, reported to Marchigiani that "these are not alibi witnesses, these are witnesses on the scene at that house." The house being referenced, according to Marchigiani, was the one where the shooting occurred. Marchigiani recalled that Kim Sweetland may have been one of the people that placed

11

No. 1-08-1868

defendant at the scene of the shooting.

Marchigiani further testified that she did not recall ever hearing the names Ronald Streeter, Farris Skinner, or Charles Streeter, and denied that she received a telephone message from Charles Streeter identifying himself as an alibi witness for defendant. Marchigiani did not recall defendant's mother telling her she was with defendant on the night of the shooting, and Marchigiani stated that, if defendant's family had informed her of an alibi, she would have investigated it.

After hearing all of the evidence, the postconviction court denied defendant's successive postconviction petition. In doing so, the court noted that defendant's claims were "not supported by credible evidence" and that Marchigiani's testimony showed that defendant received effective assistance of counsel at trial. This appeal follows.

ANALYSIS

Defendant appeals the denial following an evidentiary hearing of his successive postconviction petition. Specifically, defendant challenges the court's conclusion that defendant did not make a substantial showing of ineffective assistance of counsel for failing to investigate and call alibi witnesses. The State urges us to affirm the denial of the petition because defendant failed to show the requisite cause and prejudice of a successive postconviction claim; defendant failed to show actual innocence; and defendant failed to show an actual constitutional violation. We take each of the State's arguments in turn.

The Post-Conviction Hearing Act provides a remedy to a criminal defendant whose federal

12

or state constitutional rights were substantially violated in his original trial or sentencing hearing. People v. Pitsonbarger, 205 Ill. 2d 444, 455 (2002); 725 ILCS 5/122-1 *et seq.* (West 2006). Where the death penalty is not at issue, postconviction petitions are adjudicated in three stages. People v. Hobson, 386 Ill. App. 3d 221, 230-31 (2008). If a petition is not summarily dismissed by the trial court, it advances to the second stage, where an indigent defendant is provided assistance by counsel. Hobson, 386 Ill. App. 3d at 230-31. At the second stage, the petition under consideration must make a substantial showing of a constitutional violation or be subject to a motion to dismiss. See People v. Vasquez, 356 Ill. App. 3d 420, 422 (2005); 725 ILCS 5/122-5 (West 2006). If the State's motion to dismiss is denied, or no such motion is filed, the State must file a timely answer to the postconviction petition. 725 ILCS 5/122-5 (West 2006). If, upon consideration of the petition, with any accompanying documentation and in light of the State's answer, the trial court determines that the requisite showing of a constitutional violation has been made, a third-stage evidentiary hearing must follow. Hobson, 386 Ill. App. 3d at 231. Where, as here, a postconviction evidentiary hearing involves fact-finding and credibility determinations, we will only disturb the decision of the trial court where it is manifestly erroneous. People v. Pendleton, 223 Ill. 2d 458, 473 (2006). Manifest error is error that is clearly evident, plain, and indisputable. People v. Morgan, 212 Ill. 2d 148, 155 (2004).

An action for postconviction relief is a collateral attack upon a prior conviction and sentence, rather than a surrogate for a direct appeal. People v. Tenner, 206 Ill. 2d 381, 392 (2002). Any issues which were decided on direct appeal are barred by *res judicata*; any issues which could have been raised on direct appeal are defaulted. Tenner, 206 Ill. 2d at 392.

## Cause-and-Prejudice

Initially, the State argues that we should not address this petition on the merits because defendant failed to meet the cause-and-prejudice test as articulated in Pitsonbarger, 205 Ill. 2d at 460, and codified in section 122-1(f) (725 ILCS 5/122(f) (West 2006)).

The Act contemplates the filing of only one postconviction petition. Morgan, 212 Ill. 2d at 153; Tenner, 206 Ill. 2d at 392. Consequently, a defendant bringing a successive postconviction petition faces immense procedural default hurdles that are lowered only where fundamental fairness so requires. Pitsonbarger, 205 Ill. 2d at 459; People v. Flores, 153 Ill. 2d 264, 274 (1992). The cause-and-prejudice test is the analytical tool used to determine whether fundamental fairness requires a court to make an exception to the waiver provision of section 122-3 of the Act and to consider a claim raised in a successive postconviction petition on its merits. Pitsonbarger, 205 Ill. 2d at 459. The legislature codified the cause-and-prejudice test adopted in Pitsonbarger in section 122-1(f) of the Act (725 ILCS 5/122(f) (West 2006)). People v. Brockman, 363 Ill. App. 3d 679, 687 (2006). Under this test, claims in a successive postconviction petition are barred unless the defendant can establish good cause for failing to raise the claimed error in prior proceedings and actual prejudice resulting from the error. Tenner, 206 Ill. 2d at 393.

To establish cause, the defendant must show some objective factor external to the defense impeded his ability to raise the claim in the initial postconviction proceeding. Tenner, 206 Ill. 2d at 393. To establish prejudice, the defendant must show the claimed constitutional error so infected his trial that the resulting conviction violated due process. Tenner, 206 Ill. 2d at 393. A defendant must show both cause and prejudice with respect to each claim raised in his successive petition.

People v. Britt-El, 206 Ill. 2d 331, 339 (2002). However, even where a defendant cannot show cause and prejudice, his failure to raise a claim in an earlier petition may be excused to prevent a fundamental miscarriage of justice. Pitsonbarger, 205 Ill. 2d at 259.

Here, defendant fails to show the requisite cause because the claim–ineffective assistance of counsel for failure to investigate and present the testimony of various alibi witnesses–is barred by both *res judicata* and the doctrine of waiver. *Res judicata* and the doctrine of waiver limit postconviction relief to constitutional claims that have not been and could not have been raised earlier. Pitsonbarger, 205 Ill. 2d at 455-56. Thus, rulings on issues that were previously raised at trial or on direct appeal are barred from consideration by the doctrine of *res judicata*, and issues that could have been raised in the earlier proceedings, but were not, are considered waived. Pitsonbarger, 205 Ill. 2d at 456; 725 ILCS 5/122-3 (West 2006).

In its brief, the State argues that defendant, in his original postconviction petition, raised the issue of ineffective assistance of counsel for failing to investigate or call Farris Skinner and Ronald Streeter as alibi witnesses. According to the State, this issue is now barred by the doctrine of *res judicata*. Defendant responds that *res judicata* does not apply here because, although he raised the claim in his previous petition, it is now supported by new evidence, fundamental fairness requires that it be heard, and it was not adjudicated on the merits when his first petition was dismissed. We disagree.

Contrary to defendant's argument, our appellate review of the second-stage dismissal of defendant's first postconviction petition was a substantive ruling and is subject to *res judicata* principles. Defendant argues that *res judicata* does not apply because the "claim was dismissed

because [defendant] failed to meet the procedural requirement that he support the claim with affidavits" and that, as a result, "neither the circuit court nor the Appellate Court addressed the merits of the alibi claim." However, in People v. English, No. 1020280 (2004) (unpublished order under Supreme Court Rule 23), we held that the circuit court properly dismissed the allegations that were contained in defendant's postconviction petition, and found that defendant failed to make a substantial showing that his constitutional rights had been violated. We stated:

"In his petition, defendant first alleged that two alibi witnesses were not contacted by trial counsel. Defendant did not attach affidavits to his pro se petition; rather he requested additional time to obtain witnesses' affidavits in this initial petition, but he did not obtain any in that additional time. Furthermore, post-conviction counsel stated at the hearing that an investigator attempted to find the witnesses and no affidavits were presented to the trial court. Defendant also offered no support for his allegations of perjury and prosecutorial misconduct attendant thereto to show that his verified allegations were capable of objective or independent corroboration as required under section 122-2. [citation]. This alone justifies the dismissal of his petition." People v. English, No. 1020280, slip op. at 8 (2004) (unpublished order under Supreme Court Rule 23)

Accordingly, because defendant previously raised this issue and we ruled on it, defendant's

ineffective assistance of counsel claim regarding Farris Skinner and Ronald Streeter is barred by the doctrine of *res judicata*. See People v. Jones, 213 Ill. 2d 498, 505 (2004) (any claim of a substantial denial of a constitutional right not raised in a postconviction petition is waived).

In addition, defendant could have raised the alibi claim with respect to witness Charles Streeter in his *pro se* postconviction petition, as that petition alleged an identical claim with respect to Farris Skinner and Ronald Streeter. Defendant failed to do so. We note that, in his affidavit, defendant attests that he was with all three witnesses at the same party on the night of the shooting:

"On March 18 and 19, 1995, until the morning on the 20th, I was with, Bernard [Farris] Skinner, continuously, and between approximately 10:00 PM, continuously until approximately 12:00 PM, on the 19th we were at my mother's home at, 1409 N. Lockwood, Chicago, Illinois, along with Charles Streeter and Ronald Streeter."

Accordingly, defendant knew that he was with Charles Streeter at the time in question and must have known that Charles Streeter was a potential alibi witness for him at the time he filed his initial petition. Therefore, defendant could have included Charles' name along with Farris's and Ronald's names in that petition. Because this issue could have been raised previously but was not, it is waived. See Pitsonbarger, 205 Ill. 2d at 456.

Thus, defendant is unable to establish the requisite cause to file a successive postconviction petition. See Pitsonbarger, 205 Ill. 2d at 456.

Actual Innocence

Next, defendant contends that he should be excused from showing the cause and prejudice required of a successive postconviction petition because he alleges actual innocence. Pursuant to People v. Ortiz, 235 Ill. 2d 319, 330 (2009), a defendant is excused from showing cause and prejudice where he alleges a claim of actual innocence in a successive postconviction petition. We have carefully examined the instant postconviction petition, and are of the opinion that defendant failed to state a claim of actual innocence, but rather claimed that his trial counsel was ineffective for failing to present witnesses to testify to an alibi defense where such testimony would have proven, as defendant previously alleged in his initial postconviction petition, that "defendant could not be the killer." Defendant's claim, though labeled as actual innocence, is nothing more than a reiteration of the same ineffective assistance of counsel claim raised in his original postconviction petition.

Moreover, even if defendant had asserted a claim for actual innocence, his claim would fail because defendant's alleged alibi evidence was not newly discovered. A claim of innocence must be based on newly discovered evidence that establishes the defendant's innocence rather than merely supplementing an assertion of a constitutional violation with respect to trial. Ortiz, 235 Ill. 2d at 331, citing Morgan, 212 Ill. 2d at 154, citing People v. Washington, 171 Ill. 2d 475, 479 (1996). The supporting evidence must be newly discovered, material, noncumulative, and of such conclusive character as would probably change the result on retrial. Morgan, 212 Ill. 2d at 154. Newly discovered evidence is evidence that was unavailable at trial and could not have been discovered sooner through due diligence. People v. Harris, 206 Ill. 2d 293, 301 (2002).

18

Here, defendant raised the issue of trial counsel's alleged ineffectiveness for failing to investigate and/or call alibi witnesses in his original postconviction petition. However, in his original petition, defendant listed only Farris Skinner and Ronald Streeter as the potential alibi witnesses. Defendant identified Charles Streeter as a potential alibi witness for the first time in his successive petition. Defendant attested in his affidavit that he, Farris, Ronald, and Charles were all together at defendant's mother's house at the time of the shooting. Accordingly, this was not newly discovered evidence; defendant was aware that Charles Streeter was with him during the time in question and he had this information available to him both at the time of trial and when he filed his initial postconviction petition. See People v. Collier, 387 Ill. App. 3d 630, 637 (2008) ("evidence is not newly discovered when it presents facts already known to a defendant at or prior to trial, though the source of these facts may have been unknown, unavailable or uncooperative").

Defendant urges us to hold that a petitioner need not prove that the evidence was newly discovered to establish a claim of actual innocence. This court recently addressed whether a defendant must prove all three elements for a claim of actual innocence and held that the actual innocence exception to the bar on successive postconviction petitions is met only where the defendant can prove all of the elements of a freestanding claim of actual innocence: that the evidence is newly discovered, noncumulative, and material. People v. Williams, 394 Ill. App. 3d 236, 248 (2009). Defendant considers the Williams case "not sensible" and urges us to depart from that holding. We decline to do so. In Williams, the defendant filed a successive postconviction petition alleging, in part, that he should be permitted to file the petition because he was actually innocent. Williams, 394 Ill. App. 3d at 246. Like the instant defendant, the

<u>Williams</u> defendant argued that, because he was claiming actual innocence, he should not have to show that the evidence of his innocence was newly discovered in order to satisfy the actual innocence exception to the bar on successive postconviction petitions. <u>Williams</u>, 394 Ill. App. 3d at 247. This court rejected the defendant's argument and held that a defendant who wishes to invoke the actual innocence exception to the bar against successive petitions must show that the evidence of his innocence was newly discovered. <u>Williams</u>, 394 Ill. App. 3d at 247. Because the evidence of the defendant's innocence was not newly discovered, the defendant's successive postconviction petition was barred. <u>Williams</u>, 394 Ill. App. 3d at 247.

Defendant is also unable to establish that the evidence put forth by his three new alibi witnesses was of such conclusive character that it would have probably changed the result on retrial. See <u>Morgan</u>, 212 Ill. 2d at 154. There was substantial credible evidence adduced at trial which contradicted the testimony of defendant and his alibi witnesses. Defendant's signed statement which was introduced at trial detailed the events of the evening, including that defendant and codefendant sold crack cocaine to the victims and then decided to rob them. In their attempt to rob the victims, codefendant shot one victim and defendant shot the other victim. In addition, there was credible evidence by Casey Klepacki, the surviving victim, who positively identified defendant from a lineup and in court as the person who shot him and his brother. William Wilson also positively identified defendant as the person he saw fleeing the crime scene immediately after the shootings armed with the same caliber of handgun that killed victim Frank and wounded victim Casey. Wilson also testified that defendant told him he had shot the brothers after robbing them.

We find that our supreme court's recent holding in <u>Ortiz</u> does not change the outcome of

20

the case at bar, where defendant cloaked his ineffective assistance of counsel claim in the veil of an actual innocence claim and the evidence presented was not new. In Ortiz, the court was called upon to determine whether a successive claim of actual innocence was subject to the cause and prejudice test. Ortiz, 235 Ill. 2d at 329-32. The court held that a claim of actual innocence touches on fundamental fairness concerns and determined that such claims fall outside the confines of the cause and prejudice test but are subject to the requirement that the evidence be newly discovered. Ortiz, 235 Ill. 2d at 329-33. "Newly discovered" means the evidence could not have been discovered sooner through due diligence. Ortiz, 235 Ill. 2d at 334. Moreover, evidence of actual innocence must be material to the issue and not merely cumulative of other trial evidence and be of " 'such conclusive character that it would probably change the result on retrial.' " Ortiz, 235 Ill. 2d at 333, quoting Morgan, 212 Ill. 2d at 154, citing People v. Barrow, 195 Ill. 2d 506, 540-41 (2001).

Unlike Ortiz, defendant here does not have an actual innocence claim, but merely has an ineffective assistance of counsel claim that he has recharacterized as innocence. Even if defendant did have a claim of actual innocence, however, it would fail to meet the requirement that it be newly discovered. Accordingly, defendant is not excused from having to show cause and prejudice in order to file a successive petition.

Ineffective Assistance of Trial Counsel Claim

Even if defendant had met his burden for filing a successive postconviction petition, we would still affirm the denial of the petition. We find no manifest error in the postconviction court's

21

denial of defendant's postconviction claim that he was denied the effective assistance of trial counsel where defendant failed to make a substantial showing of a constitutional violation.

To establish a claim of ineffective assistance of counsel, a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); People v. Coulter, 352 Ill. App. 3d 151, 157 (2004). Failure to make the requisite showing of either deficient performance or sufficient prejudice defeats the claim. People v. Palmer, 162 Ill. 2d 465, 475-76 (1994). To satisfy the first prong, a defendant must overcome the presumption that contested conduct which might be considered trial strategy is generally immune from claims of ineffective assistance of counsel. People v. Martinez, 342 Ill. App. 3d 849, 859 (2003). To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's insufficient performance, the result of the proceeding would have been different. People v. Easley, 192 Ill. 2d 307, 317 (2000). Specifically, the defendant must show that counsel's deficient performance rendered the result of the proceeding unreliable or fundamentally unfair. Easley, 192 Ill. 2d at 317-18.

One of the critical functions of the postconviction court during an evidentiary hearing is to determine the credibility of witnesses and the weight to be given their testimony. Morgan, 212 Ill. 2d at 162. Where, as here, a postconviction evidentiary hearing involves fact-finding and credibility determinations, we will only disturb the decision of the trial court where it is manifestly erroneous. Pendleton, 223 Ill. 2d at 473. Manifest error is error that is clearly evident, plain, and indisputable. Morgan, 212 Ill. 2d at 155.

Here, following the evidentiary hearing, the postconviction court specifically found that defendant's claim was "not supported by credible evidence." It also found that the testimony of defendant's trial attorney showed that defendant received effective assistance of counsel. The postconviction court's credibility determination against defendant is supported by the many inconsistencies and implausibilities put forth by defendant, and we can discern no manifest error in that judgment.

At the evidentiary hearing, the testimony of defendant's trial counsel, Marchigiani, impeached defendant and his witnesses. Defendant testified that he told his trial counsel about alibi witnesses Farris, Charles, and Ronald, but only did so a year and a half into the case. Marchigiani, however, denied that defendant mentioned any of those names to her. Marchigiani also testified that she received information immediately prior to trial about two other potential alibi witnesses. Upon investigating these witnesses, however, she determined that they were not alibi witnesses but occurrence witnesses. Additionally, Charles Streeter testified that he left a telephone message for counsel identifying himself as an alibi witness for defendant and claimed that counsel never returned his phone call. Marchigiani, however, denied that she received a phone call from Charles Streeter.

A review of the record also reveals substantial contradictions between the record and the testimony of defendant and his witnesses. First, defendant confessed to the police and the assistant State's Attorney, giving them a signed, detailed description of his involvement in the shooting. In addition, the surviving victim, Casey Klepacki, positively identified defendant from a lineup and in court as the shooter. Wilson also positively identified defendant as the person he saw fleeing the crime scene immediately following the shootings, armed with a handgun. Wilson also testified that

23

defendant told him about his involvement in the shooting.

The court's determination that defendant's alibi claim was incredible is not manifestly erroneous, where defendant's alibi claim is extremely implausible. See People v. Purnell, 126 Ill. App. 3d 608, 620 (1984) ("While there is no burden on defendant to prove his innocence, if he elects to explain the circumstances, he is bound to tell a reasonable story or be judged by its improbabilities and inconsistencies"). Defendant claims that, although he had alibi witnesses who would place him in another locale during the shooting, he did not tell the police or the assistant State's Attorney who spoke to him on the day he was arrested about the alibi. Instead, defendant gave a statement implicating himself in the armed robbery and murder. Also, it is incredible that defendant would wait over a year before mentioning to his trial counsel that he had an alibi, even though Marchigiani spoke to defendant about the shooting soon after she began to represent him. Defendant also spoke to Farris Skinner by phone on the day of his arrest from the police station, yet he did not ask Farris to come to the station and provide him with an alibi. Defendant testified that he did not mention the alibi because "it didn't really come up" and he "didn't think it was important."

Additionally, defendant's sister Charlotte testified at the evidentiary hearing that she and defendant's mother attended most of the trial dates. The alleged party that supplied defendant his alibi was held at defendant's mother's house, and both she and Charlotte were there. Yet defendant did not tell his attorney during trial about these two available alibi witnesses. Rather, defendant included Farris Skinner and Ronald Streeter as alibi witnesses that trial counsel should have called in his original postconviction petition, but did not include Charles Streeter, whom defendant also

would have known was at the alibi-providing party with him.

Moreover, the three purported alibi witnesses admitted that they were aware that they could provide an alibi for defendant and that they knew defendant had been arrested for a murder that took place during the time of the party. However, although they considered defendant a friend, all testified that they kept this potential alibi knowledge to themselves and did not contact the police or the State's Attorney's office.

There were also contradictions between the affidavits and the live testimony of the defense witnesses. Both Charles Streeter and Farris Skinner testified that they were with defendant at differing hours than those to which they had attested in their affidavits. Charles Streeter also testified at the hearing that he spoke to defendant's sister Charlotte about being able to give defendant an alibi and she asked him to call defendant's attorney. Yet Charlotte specifically testified at the hearing that she never spoke to Charles Streeter about testifying for defendant.

Moreover, the postconviction court correctly found that defendant failed to meet his burden of showing that his trial counsel was ineffective for failing to investigate his alibi defense. "Whether defense counsel was ineffective for failure to investigate is determined by the value of the evidence that was not presented at trial and the closeness of the evidence that was presented. [Citation.] Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients. [Citation.] Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's alibi defense. It is fundamental that this obligation necessarily requires discussion by defense counsel with the client regarding the alibi defense." People v. Morris, 335 Ill. App. 3d 70, 79 (2002). Here, defense counsel's testimony, which was believed by

the postconviction court, established that neither defendant nor his family alerted counsel to defendant's alleged alibi; defendant never mentioned Charles Streeter, Ronald Streeter, or Farris Skinner as potential alibi witnesses; and none of these purported alibi witnesses ever contacted defense counsel. Accordingly, because counsel was never apprised of these purported alibi witnesses by defendant, she was not ineffective for failing to investigate them or call them as witnesses.

In fact, counsel testified that she investigated the potential alibi witnesses of which she was aware. Specifically, counsel was alerted to two potential alibi witnesses immediately prior to trial. Although counsel could not recall with certainty their names, she knew that they were not named Charles Streeter, Ronald Streeter, or Farris Skinner. Counsel instructed an investigator to locate and interview the two potential witnesses. The investigator did so, and the interview revealed that the witnesses were actually occurrence witnesses whose testimony would place defendant at the murder site, rather than alibi witnesses. Counsel then decided not to present that testimony at trial. Counsel's decision regarding whether to present a particular witness is generally a matter of trial strategy, which enjoys a strong presumption that it is the product of sound trial strategy and not incompetence, and will not support a claim of ineffective assistance of counsel. People v. Enis, 194 Ill. 2d 361, 378 (2000).

Furthermore, defendant is unable to show that he was prejudiced by any of trial counsel's alleged failings. See Easley, 192 Ill. 2d at 317 (to establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's insufficient performance, the result of the proceeding would have been different). Even if Ronald Streeter, Charles Streeter, and Farris

Skinner would have testified that defendant was with them at the time of the murder, the outcome of the trial would have been the same. Defendant gave a detailed statement to the police and the assistant State's Attorney in which he admitted his participation in the armed robbery and murder. This statement was admitted at trial. Defendant's confession was corroborated at trial by the testimony of the surviving victim, Casey Klepacki, who positively identified defendant as the shooter. We note that the testimony of but one witness is sufficient to convict where the witness is credible and viewed the accused under conditions permitting a positive identification to be made. People v. Slim, 127 Ill. 2d 302, 308 (1989). Defendant was also positively identified by William Wilson as the person he saw fleeing the crime scene, armed, immediately after the shootings. Wilson testified that defendant admitted to him that he shot the men after robbing them. Accordingly, in the face of this overwhelming evidence of guilt, defendant is unable to show that he was prejudiced by any alleged ineffectiveness of his trial counsel.

CONCLUSION

In light of the many inconsistencies in defendant's and his witnesses' statements, the testimony of trial counsel, and the evidence before us, we find no manifest error in the decision of the trial court to deny this successive postconviction petition.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

TOOMIN, P.J., and LAVIN, J., concur.