2026 IL App (1st) 241478-UB

FIRST DIVISION
April 13, 2026

No. 1-24-1478

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 02 CR 2590 |
| | ) | |
| GERALD BERRY JR., | ) | |
| | ) | Honorable Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the trial court's order denying defendant leave to file a successive postconviction petition. Defendant failed to raise, in his initial postconviction petition, the claim that his mandatory life sentence violates the Proportionate Penalties Clause of the Illinois Constitution. Defendant now fails to make a showing of cause for failing to raise the issue in his initial petition. As defendant has not demonstrated cause for failing to raise his claim at an earlier stage, the trial court correctly denied him leave to file a successive petition.[1]

---

[1] Justice Terrence J. Lavin, originally assigned to this appeal as a panel member, retired from this court on March 31, 2026. Justice Cynthia Y. Cobbs, has taken his part as a panel member, and has reviewed the record and briefs filed by the parties.

¶ 2     Defendant Gerald Berry, Jr. appeals from an order of the circuit court denying him leave to file a successive postconviction petition. Defendant argues that he should have been granted leave to file his successive petition because he met the cause and prejudice requirements for raising such a claim in a second petition. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4     In this appeal, defendant is challenging the trial court's order denying him leave to file a successive postconviction petition. This case has previously been before us twice: on direct appeal, *People v. Berry*, 378 Ill. App. 3d 1119 (Feb. 29, 2008) (Unpublished order under Supreme Court Rule 23), and on an appeal from the dismissal of the initial postconviction petition, *People v. Berry*, 2011 IL App (1st) 093362-U. Therefore, we set forth just a summary of the facts and those facts that are pertinent to our review of the challenged order.

¶ 5     On December 27, 2001, four men in a vehicle went to the home of Ricca James in Country Club Hills, Illinois to steal money from Ms. James's son. Two individuals who were in the vehicle, Lorree Scott Young and Trumane McClure, entered the home while defendant and John McGowan remained outside. Defendant claimed he was simply waiting in the vehicle watching television. Defendant was 20 years old at that time.

¶ 6     When Young and McClure entered the home, Ms. James was watching television with her infant grandson. Ms. James's two sons and one of their girlfriends also lived in the home, but they were not present when the home invasion began. Ms. James informed Young and McClure that her son was not home. They, in turn, informed Ms. James that they were waiting for her son to return. Ms. James subsequently heard the garage door open and Young and McClure went downstairs. Young and McClure returned upstairs with Ms. James's son, Torrey James, and his girlfriend. Young told Torrey James to give them the money or else they would start shooting

one family member at a time. At that point, two gunshots rang out and Young, the intruder, fell to the floor. Ms. James then heard her son struggling with the other intruder, McClure, in the hallway. Another gunshot rang out. This time, Torrey James was shot.

¶ 7     McClure took out a phone and called for help. Defendant entered the home, helped carry Young out of the house, and the four men left, with McClure driving their vehicle from the scene. Both Young and Torrey James died from their gunshot wounds. Defendant was arrested and charged with two counts of first-degree murder on an accountability theory.

¶ 8     After the State presented its case, defendant testified in his own defense. Defendant admitted being present outside Ms. James's home but stated that his belief was that his companions were only there to "case" the house for a future robbery. Defendant knew his friends intended on robbing the house at some point, but he never planned to be involved. He merely sat in the vehicle while everything happened and then went to help carry out Young's body when McGowan asked for his assistance.

¶ 9     During deliberations, the jury sent the trial court a note asking, "Is it possible for us to find him guilty of *home invasion* and not 1st degree murder?" (Emphasis added). The trial court responded to the note indicating that "the only charges for you to decide on are first degree murder" and "you have all the appropriate instructions for this charge." The jury found defendant guilty of two counts of first degree murder – one conviction each for the deaths of Torrey James and Lorree Scott Young.

¶ 10     At sentencing, the State presented the victim impact statement of Ms. James, who lost her son and was herself terrorized in the home invasion. Defendant presented testimony from numerous witnesses who testified about his good character. Ultimately, the law mandated a sentence of natural life imprisonment, so the evidence in mitigation had no effect on the

outcome. Defense counsel acknowledged during argument at the sentencing hearing that "the law does tie the court's hands," but maintained that the offense was a "snapshot in time where *** there was a very egregious lapse in judgment" but the events were not reflective of defendant's entire life.

¶ 11    In handing down the sentence, the trial judge stated that, "as a judge, I have to deal with things as a jurist and follow the law." The trial judge acknowledged the evidence in mitigation but also explained that "two people died as a result of something which shouldn't have happened." The court expressed that, "[c]ertainly, this Court wishes it could have little more leniency in whatever way regarding this." However, the judge recognized that the applicable sentencing statute mandated "a term of natural life imprisonment . . . irrespective of [defendant's] age at the time of the commission of the offense."

¶ 12    Defense counsel filed a motion to reconsider the sentence arguing that the mandatory natural life sentence was excessive and that the sentence was unconstitutional based on defendant's limited role in the offense and because one of the decedents was a co-offender. At the hearing on the motion to reconsider the sentence, the trial court found that defense counsel's "points are well taken" however, the trial court explained that it "must follow the law" and instructed defendant to "[s]ave the issues for the justices at the next level."

¶ 13    On direct appeal, defendant argued that the jury instructions were erroneous, and the State misstated the law during closing argument. He further argued that counsel was ineffective for failing to object to either error and for not tendering proper jury instructions. We affirmed defendant's conviction. *People v. Berry*, No. 1-06-1732 (Nov. 8, 2010) (unpublished order under Supreme Court Rule 23). The Illinois Supreme Court denied defendant's petition for leave to appeal. *People v. Berry*, 229 Ill. 2d 631 (Table) (Sept. 24, 2008). Defendant petitioned the

Supreme Court of the United States for a writ of certiorari which was denied. *Berry v. Illinois*, 555 U.S. 1197 (Feb. 23, 2009).

¶ 14    Defendant filed a *pro se* postconviction petition where he argued that his due process rights were violated because he was not informed that the jury sent out a note asking if it was possible to find him guilty of home invasion and not first degree murder. Defendant also argued that trial counsel was ineffective for failing to tender a verdict form for home invasion. The trial court summarily dismissed defendant's postconviction petition. We affirmed. *People v. Berry*, 2011 IL App (1st) 093362-U. The Illinois Supreme Court denied defendant's petition for leave to appeal the summary dismissal of his postconviction petition. *People v. Berry*, 963 N.E.2d 247 (Table) (Jan. 25, 2012).

¶ 15    On August 9, 2019, defendant filed a motion in the trial court seeking leave to file a successive postconviction petition. In his proposed successive petition, defendant raised one claim— that his mandatory natural life sentence is unconstitutional as applied to him under the Eighth Amendment and the Illinois Proportionate Penalties clause because he was 20 years at the time of the offense and the sentencing court was prohibited from considering his youth, as set forth in *Miller v. Alabama*, 567 U.S. 460 (2012), and his age and culpability level, as was considered in *People v. House*, 2019 IL App (1st) 110580-B.

¶ 16    Defendant argued in his proposed successive petition that he could not have asserted the claim earlier because *Miller* was decided in 2012 and *House* was decided in 2019 while he filed his initial postconviction petition in 2009 and his sentencing hearing took place back in 2006. Defendant asserted that his sentence is unconstitutional because he was 20 years old at the time, was convicted under an accountability theory, and his life sentence was mandatory. Meanwhile, Trumane McClure, his co-defendant who fired the weapon and killed Torrey James and was

actively participating in the home invasion, pled guilty in exchange for a 20-year prison sentence. Defendant attached to his petition an article explaining ongoing brain development in young adults like him and why they should be found to be less culpable than older adults.

¶ 17 Defendant filed a supplemental motion seeking leave to file a successive petition in which he attached an affidavit about his life experiences that he claims caused his brain to still be developing at 20 years old, such that he had "a lack of maturity and an undeveloped sense of responsibility" which made him "vulnerable to negative influences and outside pressure." Defendant also attached to his supplemental motion a doctor's evaluation of another defendant who was similar to defendant in some ways and was found by the doctor to be more like a juvenile than an adult, despite being 21 years old at the time of the offense. Defendant intended the evaluation to provide an example of the way defendant could similarly develop the record if he was given leave to file his successive petition.

¶ 18 Defendant later filed another supplemental motion for leave to file his successive postconviction petition. This time, defendant attached an evaluation of himself performed by Dr. James Garbarino in which the doctor evaluated him and offered an opinion that defendant's sentence "should be reconsidered in light of his immaturity in December of 2001." Dr. Garbarino found that the hallmarks of youth discussed in *Miller* apply to defendant. Dr. Garbarino explained that defendant's dysfunctional family and his witnessing domestic violence, along with him having his adolescence occur amidst a toxic social context, had a negative influence on defendant and exacerbated problems with making good decisions and managing his emotions. Dr. Garbarino opined that defendant has a strong support system, has rehabilitative potential, and should be resentenced with the sentencing court being impowered to consider defendant's youth at the time of the offense.

¶ 19    On August 19, 2022, the trial court issued a written order denying defendant leave to file a successive postconviction petition. The trial court explained that defendant "failed to plead facts to warrant further proceedings on his claim that emerging brain science about how the development of young adults applies to him." The trial court noted that defendant attached a doctor's analysis of another individual but found such an evaluation to be irrelevant for defendant. The trial court's order denying leave to file a successive postconviction petition did not expressly address or reference Dr. Garbarino's evaluation of defendant. Defendant now appeals arguing that he should have been granted leave to file his successive petition.

¶ 20                                    ANALYSIS

¶ 21    Defendant argues that the trial court erred when it denied him leave to file a successive postconviction petition. The Post–Conviction Hearing Act (725 ILCS 5/122-1 *et seq.*) provides a method by which defendants may assert that, in the proceedings that resulted in their convictions, there was a substantial denial of their federal or state constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Postconviction proceedings are not a substitute for an appeal but, rather, constitute a collateral attack on a final judgment. *People v. Davis*, 2014 IL 115595, ¶ 13.

¶ 22    A postconviction proceeding allows inquiry only into constitutional issues that were not and could not have been adjudicated on direct appeal. *People v. Williams*, 394 Ill. App. 3d 236, 242 (2009). Therefore, where a petitioner has previously taken an appeal from a judgment of conviction, the ensuing judgment of the reviewing court will bar, under the doctrine of *res judicata*, postconviction review of all issues actually decided by the reviewing court, and any other claims that could have been presented to the reviewing court but were not will be deemed to be waived. *People v. Edwards*, 2012 IL 111711, ¶ 21; see also 725 ILCS 5/122-3 (West 2022)

("Any claim of substantial denial of constitutional rights not raised in the original or an amended [postconviction] petition is waived.").

¶ 23    Under the Code of Criminal Procedure, petitioners are entitled to file only one postconviction petition, and any subsequent petitions are allowed only with leave of court. 725 ILCS 5/122-1(f) (West 2022). Leave of court may be granted only if a petitioner demonstrates cause for his failure to bring the claim in his or her initial postconviction proceedings and prejudice results from that failure. *Id*. We review *de novo* whether a petitioner has sufficiently alleged cause and prejudice so as to be entitled to file a successive petition. *People v. Blalock*, 2020 IL App (1st) 170295, ¶ 24.

¶ 24    For purposes of deciding whether leave to file a successive postconviction petition should be granted, a petitioner shows "cause" by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." *Id*. A petitioner shows "prejudice" by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id*.

¶ 25    Successive postconviction petitions are disfavored by Illinois courts. *Edwards*, 2012 IL 111711, ¶ 29. A petitioner must meet a higher burden to go forward on a successive postconviction petition than he must meet at the first stage of original postconviction proceedings. *Id*. ¶¶ 25-29.

¶ 26    In his motion for leave to file a successive postconviction petition, defendant raised the claim that his mandatory life sentence, which was imposed under a theory of accountability, violates the proportionate penalties clause of the Illinois Constitution because the trial court was unable to consider his youth, degree of participation, or any other mitigating factors at

sentencing. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11 (West 2022). Defendant contends that he made a *prima facie* showing of cause for failing to raise his proportionate penalties clause claim in his direct appeal or in his initial postconviction proceedings. Defendant asserts that "the applicable research on young adult brain development, Dr. Garbarino's evaluation applying these new scientific developments to [defendant specifically], and the relevant Illinois legal authority *** certainly were not available at the time of his sentencing hearing in 2006, or initial post-conviction proceedings in 2009."

¶ 27    Defendant claims that there were two objective factors that prevented him from raising his claim earlier: the law and the facts. As for the legal basis not being available to him, defendant recounts the developing jurisprudence surrounding the brain development for minors and emerging adults. Defendant claims that when the legal basis for a postconviction claim is not available at the time of the conviction, appeal, or initial postconviction petition, a petitioner has cause for not raising the claim sooner. As for the factual basis not being available, defendant points out that the scientific research on the maturing brain and juvenile offenders became prominent with some leading studies addressing the issue around 2015. Defendant also points out that Dr. Garbarino's evaluation of defendant became available to him in November 2019, when the doctor issued his medical opinion. That medical opinion was the first direct evidence defendant obtained to show that defendant himself had the brain development of a juvenile at the time of the offense. Thus, defendant argues that neither the facts nor the law that he needed to raise his claim were available to him at the time of his trial, his appeal, or the filing of his initial postconviction petition.

¶ 28    Contrary to defendant's arguments, however, our supreme court and this court have held that the lack of a precise legal precedent to support the claim does not constitute "cause" for failing to raise it sooner. Our supreme court has explicitly stated that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *People v. Dorsey*, 2021 IL 123010, ¶ 74. We have since expounded on the supreme court's holding, noting that "while our supreme court has suggested that emerging adults may be able to leverage *Miller* to challenge their sentences under the proportionate penalties clause, that suggestion is not tantamount to a substantial change in the law that would provide the defendant cause to file a successive petition under the Act." *People v. Walker*, 2022 IL App (1st) 201151, ¶ 28. In *Walker*, we explained that our supreme court has held that the unavailability of *Miller* or the *Miller* line of cases under Illinois law, by itself, does not provide cause for a successive petition raising youth-based sentencing claims under the proportionate penalties clause. *Id*. (citing *Dorsey*, 2021 IL 123010, ¶¶ 73-74).

¶ 29    We further explained in *Walker* that we had routinely applied *Dorsey* to reject arguments identical to those raised by the defendant there and defendant here. *Id*. ¶¶ 30-31 (citing several unpublished appellate court orders in which we held that *Dorsey* foreclosed a finding of cause based on the unavailability of the legal basis for the petitioner's claim).

¶ 30    Our supreme court has continued to follow *Dorsey* as new challenges have come before the court concerning whether the prior unavailability of established legal precedent for challenging young offenders' sentences based on their developing brains provides cause for failing to raise the issue. See *People v. Clark*, 2023 IL 127273, ¶ 61 (intellectually disabled defendant did not have cause for failing to raise a proportionate penalties clause claim earlier where "[l]ong before *Miller*, Illinois law recognized the reduced culpability of defendants with

intellectual disabilities."); *People v. Moore*, 2023 IL 126461, ¶¶ 41-42 (19-year-old offender did not have cause for failing to raise a proportionate penalties clause claim earlier where that "defendant had the essential legal tools to raise his present proposed claim *** when he filed his previous postconviction petitions.").

¶ 31     The directly controlling cases from the supreme court, however, all deal with discretionary life sentences or discretionary *de facto* life sentences handed down by the trial court. In this case, defendant's sentence was mandatory life imprisonment, despite that he was 20 years old, was found guilty under an accountability theory, and presented significant mitigation at sentencing. Defendant attempts to distinguish this case on the basis of his sentence being mandatory rather than discretionary. Defendant additionally points out that the jury in this case sent a note asking if it could find defendant guilty of home invasion rather than first-degree murder. Then, when the trial judge was handing down defendant's sentence, he explained that he wished the court "could have little more leniency" with the sentence. Nevertheless, the applicable sentencing laws dictated that the trial judge had no discretion to consider defendant's young age when imposing the sentence, and the trial judge imposed the mandatory life sentence as was required.

¶ 32     Even though the supreme court has only explicitly ruled that the legal developments since 2015 do not provide cause for failing to raise a proportionate penalties clause claim at an earlier point with regard to discretionary sentences of life imprisonment, this court has held that the distinction between discretionary and mandatory sentences does not compel a different result. In *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 56 (leave to appeal denied, 244 N.E.3d 235 (Table) (Sept. 25, 2024)), we recognized the distinction and its effect on whether a defendant has

shown cause for failing to raise a proportionate penalties clause claim prior to the U.S. Supreme Court's decision in *Miller*.

¶ 33    The defendant in *Horshaw* observed that the supreme court's decisions like *Dorsey* were based on the principle that the defendant could have raised the issue of their youth before *Miller* was decided because criminal defendants have had the essential legal tools to challenge their discretionary sentences by asserting their young age or lack of maturity for decades. *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 56. The defendant in *Horshaw* argued, however, that "no similar precedent for challenging mandatory natural life sentences imposed on emerging adults existed until *Miller* and the Illinois cases that opened the door to applying *Miller* were decided." *Id*.

¶ 34    Despite recognizing the tension between the prior case law and the defendant's attempt to distinguish it, we held in *Horshaw* that "[w]e are bound by the supreme court's decisions regarding *Miller* as they relate to the proportionate penalties clause for young adults." *Id*. at ¶ 62. We explained that *Dorsey* and the cases that followed it "all indicate that the claim at issue in this case should be viewed as nothing more than an extension of proportionate penalties claims that have existed all along and that defendant did not need *Miller* or *Miller*-related proportionate penalties precedent to raise the claim now at issue." *Id*. As such, the attempt to draw a distinction in the application of *Dorsey* between discretionary and mandatory sentences failed and the defendant could not establish cause for failing to raise the claim sooner. *Id*. Notably, the supreme court itself has never made such a distinction between mandatory or discretionary sentences and the language employed by the supreme court indicates a broad application of its holding that would cover both types of claims.

¶ 35    We find no reason to depart from the holding in *Horshaw*. Defendant suggests that he is relying on more than just the U.S. Supreme Court's decision in *Miller*; he is relying on *People v.*

*Thompson*, 2015 IL 118151 and *People v. House*, 2019 IL App (1st) 110580-B—both of which combined to develop a legal basis for his successive petition that did not exist when he filed his initial petition. However, *Horshaw* and several cases decided subsequent to *Thompson* and *House* have examined their impact and found that they do not present cause sufficient to raise a proportionate penalty clause claim in a successive postconviction petition. See, *e.g.*, *People v. French*, 2022 IL App (1st) 220122, ¶ 27 ("Unless our supreme court reconsiders its decision in *Dorsey*, we are bound by the court's determination that *Miller* and its progeny do not provide a petitioner with cause for failing to raise a proportionate penalties claim in an initial postconviction petition."); *People v. McGee*, 2025 IL App (1st) 231591-U, ¶ 32 (Unpublished order under Supreme Court Rule 23). "The claim at issue in this case should be viewed as nothing more than an extension of proportionate penalties claims that have existed all along and that defendant did not need *Miller* or *Miller*-related proportionate penalties precedent to raise the claim now at issue." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. The proportionate penalties clause "existed long before defendant filed his initial postconviction petition and, thus, he could have raised the claim at that time" and "summon[ed] the evidentiary support." See *French*, 2022 IL App (1st) 220122, ¶¶ 33-34.

¶ 36    Because defendant has not made a *prima facie* showing of cause, we do not reach the question of whether he has made a *prima facie* showing of prejudice. See *People v. Brown*, 225 Ill. 2d 188, 207 (2007) (where defendant has failed to establish cause, it is not necessary for the court to consider prejudice).

¶ 37    We are cognizant of the fact that our supreme court has allowed a petition for leave to appeal in at least one case raising the same issue defendant raises here. See *McGee*, 2025 IL App (1st) 231591-U, ¶ 36 (petition for leave to appeal allowed, 270 N.E.3d 828 (Ill. 2025)). The

General Assembly also is apparently working on legislation designed to address some of the issues surrounding sentencing youthful offenders. Nevertheless, as the law currently stands, defendant has failed to show cause for failing to raise his claim earlier and, thus, he has failed to meet his burden to demonstrate his right to proceed on a successive postconviction petition. Thus, the trial properly denied defendant leave to file his successive postconviction petition.

¶ 38                                 CONCLUSION

¶ 39     Accordingly, we affirm.

¶ 40     Affirmed.